# In the United States Court of Federal Claims

|  |  |
|---|---|
| ONNI UNION LOFTS LP, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant.* | No. 26-482<br>(Filed: July 22, 2026) |

*Kevin Barnett*, BakerHostetler, Washington, D.C., for Plaintiffs.

*Yariv S. Pierce*, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

## I.    Introduction

Plaintiffs are residential rental property owners in California. They seek compensation from the Government arising from their inability to evict allegedly delinquent tenants under the Centers for Disease Control and Prevention's ("CDC") 2020 Eviction Moratorium ("CDC Order" or "Order"). Compl., ECF No. 1. Plaintiffs allege the CDC Order was a compensable taking of their property and property rights without just compensation under the Fifth Amendment. *Id.* ¶ 9. In the alternative, Plaintiffs contend the CDC Order was an illegal exaction that enriched the Government at Plaintiffs' expense. *Id.* ¶¶ 11, 100.

Defendant filed a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim under Rule of the Court of Federal Claims ("RCFC") 12(b)(6). Def.'s Mot. to Dismiss ("Mot."), ECF No. 7. Defendant argues (1) Plaintiffs' physical takings claim fails as a matter of law because the CDC Order was unauthorized and otherwise not a taking, and (2) Plaintiffs' illegal exaction claim fails because Plaintiffs did not pay money either to the government or at the direction of the government. *Id.* at 9–14.

As Defendant acknowledges, its arguments as to Plaintiffs' takings claim are foreclosed by recent Federal Circuit precedent and are only made to preserve them for future appellate review. *Id.* at 12. Count I can therefore move forward. However, Plaintiffs have failed to state an illegal exaction claim because the CDC Order did not mandate the payment of money. Accordingly, for the reasons below, Defendant's Motion to Dismiss is **GRANTED-IN-PART AND DENIED-IN-PART**.

1

## II.    Background

### A.    Factual Background[1]

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which instituted a 120-day moratorium on commencing eviction proceedings for nonpayment of rent as to certain properties that received federal assistance or federally backed loans.  15 U.S.C. § 9058(b).  The moratorium expired on July 24, 2020.  *Id.*

On August 8, 2020, the President issued Executive Order 13945, titled "Fighting the Spread of COVID-19 by Providing Assistance to Renters and Homeowners."  85 Fed. Reg. 49935 (Aug. 8, 2020).  It stated: "[T]he policy of the United States [is] to minimize, to the greatest extent possible, residential evictions and foreclosures during the ongoing COVID-19 national emergency."  *Id.* at 49936.  The Executive Order also directed the Secretary of Health and Human Services and the CDC Director to "consider whether any measures temporarily halting residential evictions of any tenants for failure to pay rent are reasonably necessary to prevent the further spread of COVID-19 from one State or possession into any other State or possession."  *Id.*

Less than a month later, on September 4, 2020, the CDC issued the Order imposing the eviction moratorium.  *See* "Temporary Halt in Residential Evictions [t]o Prevent the Further Spread of COVID-19."  85 Fed. Reg. 55292 (Sept. 4, 2020).  The CDC Order provided that "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action shall not evict any covered person from any residential property in any State or U.S. territory in which there are documented cases of COVID-19 that provides a level of public-health protections below the requirements listed in this Order."  *Id.* at 55296.

The CDC Order did not relieve tenants of their obligation to pay rent or landlords from commencing eviction proceedings for the nonpayment of rent.  *Id.* at 55294.  The CDC Order's sole prohibition was physical eviction for nonpayment of rent.  *See id.* at 55293, 55294.  The Order was originally set to expire on December 31, 2020.  *Id.* at 55297.

On December 27, 2020, Congress extended the Order by a month, through January 31, 2021.  Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, sec. 502, 134 Stat. 1182, 2078–79.  The CDC then extended the Order shortly before its expiration.  86 Fed. Reg. 8020 (Feb. 3, 2021) (extending through March 31, 2021).  It did so again on multiple occasions, ultimately through October 3, 2021.  86 Fed. Reg. 16731 (Mar. 31, 2021) (extending through June 30, 2021); 86 Fed. Reg. 34010 (June 28, 2021) (extending through July 31, 2021); 86 Fed. Reg. 43244 (Aug. 6, 2021) (extending through October 3, 2021).[2]

---

[1] This section, in part, recounts the government actions underlying Plaintiffs' claims.  The Court takes judicial notice of these facts.  *See Zulueta v. United States*, 553 F. App'x 983, 986 (Fed. Cir. 2014).

[2] These extensions included modifications to the originally issued CDC Order, but these modifications are not relevant to ruling on Defendant's Motion.

According to the Complaint, "Plaintiffs are residential rental property owners whose properties were occupied by individuals who were not paying all rent due. Yet because of the CDC Order, Plaintiffs could not evict these individuals and re-lease the rental units to rent-paying tenants, but had to allow the non-rent-paying individuals to continue to occupy the Plaintiffs' property to the Plaintiffs' detriment." Compl. ¶ 15.

**B.    Related Cases and Procedural History**

The Supreme Court considered the legality of the CDC Order in *Alabama Ass'n of Realtors v. Dep't of Health & Human Services*. 594 U.S. 758 (2021) ("*Alabama*"). In that case, the plaintiffs contended the CDC Order exceeded the CDC's statutory authority and violated the Administrative Procedure Act. *Id.* at 759, 761. The district court agreed with the plaintiffs and vacated the Order but granted the government's request to stay that result pending appeal. *Id.* at 761–62.

In August 2021, the Supreme Court vacated the district court's stay, thus allowing the Order's vacatur to take effect. *Id.* at 763. The Supreme Court found the plaintiffs had a substantial likelihood of success on the merits. *Id.* at 759 (finding plaintiffs were "virtually certain to succeed" on their statutory-authority claim). The district court's vacatur then took effect and the government voluntarily dismissed its appeal.

Subsequently, a group of plaintiffs filed suit in this Court alleging the CDC Order prevented them from evicting non-rent-paying tenants. *Darby Dev. Co. v. United States*, 160 Fed. Cl. 45, 48 (2022) ("*Darby I*"), *rev'd and remanded*, 112 F.4th 1017 (Fed. Cir. 2024). According to the plaintiffs, the Order constituted a physical taking of their rental properties for public use and thus required just compensation under the Fifth Amendment's Takings Clause. *Id.* at 51. The *Darby* plaintiffs alternatively claimed the CDC Order was an illegal exaction. *Id.* at 55.

Judge Bonilla granted the Government's Motion to Dismiss, finding that because the Supreme Court held the CDC Order was likely unauthorized in *Alabama*, plaintiffs' takings claim failed as a matter of law. *Id.* at 53. Judge Bonilla also dismissed the illegal exaction claim, because the government "did not direct plaintiffs to waive or defer rental payments otherwise due them." *Id.* at 55.

The U.S. Court of Appeals for the Federal Circuit reversed, finding that "'authorized' is not synonymous with 'lawful' or 'done with legal authority'" for Takings Clause purposes. *Darby Dev. Co. v. United States*, 112 F.4th 1017, 1023 (Fed. Cir. 2024) ("*Darby II*"). The Federal Circuit also rejected the Government's alternative argument that the CDC Order could not constitute a physical taking because it "merely regulated the landlord-tenant relationship" under *Yee v. City of Escondido*, 503 U.S. 519 (1992). *Darby II*, 112 F.4th at 1023. Finally, the Federal Circuit did not reach the illegal exaction claim because the panel determined it was unnecessary considering the Court's reversal as to the takings claim. *Id.* at 1022 n.4.

3

Plaintiffs filed their Complaint on March 27, 2026.  Compl.  Defendant filed a Motion to Dismiss on May 29, 2026.  Mot.  Defendant's Motion is now fully briefed and ripe for review. *See* Mot.; Pl.'s Resp. ("Resp."), ECF No. 8; Def.'s Reply ("Reply"), ECF No. 9.

## III.   Jurisdiction and Legal Standards

The Tucker Act, 28 U.S.C. § 1491(a)(1), confers jurisdiction on this Court to hear both just compensation claims under the Takings Clause, and illegal exaction claims under the Due Process Clause.  *See Boeing Co. v. United States*, 968 F.3d 1371, 1384 (Fed. Cir. 2020); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987).

### A.   Takings Claim

The Takings Clause of the Fifth Amendment to the U.S. Constitution provides: "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V. The Federal Circuit has laid out the requirements for a physical takings claim: "A physical taking of land occurs when the government itself occupies the property or requires the landowner to submit to physical occupation of its land, whether by the government or a third party."  *Forest Props., Inc. v. United States*, 177 F.3d 1360, 1364 (Fed. Cir. 1999) (citation modified).

Plaintiffs have alleged the latter: physical occupation by a third party.  Compl. ¶ 1. "[G]overnment-authorized invasions of property . . . are physical takings requiring just compensation."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 152 (2021).  And when a "regulation appropriates a right to physically invade [one's] property," it constitutes "a *per se* physical taking."  *Id.*  Accordingly, "the Court considers two questions: (1) whether the alleged property invasion was authorized, and if so, (2) whether it enacted a *per se* physical taking of Plaintiff's property."  *Shaffer v. United States*, 178 Fed. Cl. 576, 579 (2025) (citation modified).

### B.   Illegal Exaction

An illegal exaction claim is grounded in the Due Process Clause of the Fifth Amendment. *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005).  "The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power."  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996).

"An illegal exaction claim may be maintained when the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."  *Id.* at 1572–73 (citation modified).  "The amount exacted and paid may be recovered whether the money was paid directly to the government, or was paid to others at the direction of the government to meet a governmental obligation."  *Id.* at 1573.

"The essence of an illegal exaction is when the government has the citizen's money in its pocket."  *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1348 (Fed. Cir. 2021) (internal quotation marks omitted).  But there is no illegal exaction where the Government prevents

4

money from entering an individual's account.  *See Piszel v. United States*, 833 F.3d 1366, 1382 (Fed. Cir. 2016) (citing *Westfed Holdings, Inc. v. United States*, 52 Fed. Cl. 135, 153 (2002)).

### C.        Motion to Dismiss under Rule 12(b)(6)

Defendant moves to dismiss the Complaint under RCFC 12(b)(6) for failure to state a claim.  Mot. at 1.  In evaluating a Rule 12(b)(6) motion, "the court must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  *Ainslie v. United States*, 355 F.3d 1371, 1373 (Fed. Cir. 2004) (citation modified).  Plaintiffs "must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief" to state a valid claim and survive a 12(b)(6) motion.  *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (holding alleged facts must "raise a right to relief above the speculative level"); *see also Leider v. United States*, 301 F.3d 1290, 1295 (Fed. Cir. 2002) (holding dismissal under 12(b)(6) is proper when a plaintiff "can prove no set of facts in support of its claim which would entitle it to relief" (citation modified)).

## IV.     Discussion

### A.        Defendant's Arguments as to Plaintiffs' Physical Takings Claim Are Foreclosed by *Darby II.*

Count I of Plaintiffs' Complaint alleges a physical taking without just compensation.  Compl. ¶¶ 79–95.  Plaintiffs claim that without the CARES Act or the CDC Order, they "could have evicted (or excluded from their property) the non-rent paying tenants" and thus "the CDC Order constitutes a compensable physical taking."  *Id.* ¶¶ 86–90.  Defendant counters that (1) the CDC Order was not authorized and cannot be a taking and (2) the CDC Order is not a taking under *Yee*.  Mot. at 9–12.

In *Darby II*, the Federal Circuit held the CDC Order was authorized for takings claim purposes "because the CDC issued the Order within the normal scope of its duties, and because it did not contravene any explicit prohibition or positively expressed congressional intent in so doing."  112 F.4th at 1029.  Because the CDC Order removed landlords' ability to evict delinquent tenants, it "resulted in government-authorized physical invasion."  *Id.* at 1034.  Similarly, the *Darby II* Court determined *Yee* was not applicable to the CDC Order and the plaintiff's claims.  *Id.* at 1034–36.

The Government concedes that its arguments are contrary to *Darby II* and it is only asserting them to preserve its right to further review.  *See* Mot. at 10 ("[G]iven that the issues raised in *Darby* may potentially be subject to further review by the Supreme Court in this or another action, we maintain our argument that the unauthorized nature of the Eviction Moratorium precludes a cognizable takings claim here."); *id.* at 12 ("Accordingly, to the extent that *Yee* is the controlling Supreme Court authority, plaintiffs would be unable to state a claim for a physical taking of their property.  As with the authority issue, however, we acknowledge that the Federal Circuit has held in [*Darby II*] that those plaintiffs stated a claim that [the] Eviction Moratorium effected a *per se* physical taking.").

"The Court of Federal Claims may not deviate from the precedent of the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the Supreme Court." *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005) (citation modified). "Because the Government has not raised [any] argument to distinguish this case from [*Darby II*], and the Court finds no such distinction, this Court is bound by [*Darby II*]." *Shaffer*, 178 Fed. Cl. at 579–80.

Accordingly, Defendant's Motion to Dismiss as to Count I is denied.

### B.      Plaintiffs Fail to State an Illegal Exaction Claim.

Count II of Plaintiffs' Complaint alleges, in the alternative, that the CDC Order "constitutes an illegal exaction because the CDC exceeded and contravened its statutory and regulatory authority." Compl. ¶ 97. "The CDC Order has enriched the Government at Plaintiffs' expense, directly or in effect, by illegally imposing costs and expenses on Plaintiffs that Plaintiffs should not have to bear and that the Government otherwise would bear, including without limitation the cost of housing delinquent or non-rent paying individuals." *Id.* ¶ 100. The Federal Circuit did not address the illegal exaction claim made in *Darby*. *Darby II*, 112 F.4th at 1022 n.4.

Defendant asserts Plaintiffs' illegal exaction claim fails because "[Plaintiffs] have not, and cannot, allege that they paid money to the Government or to a third party at the direction of the Government to satisfy a Government obligation." Mot. at 13; *see also Westfed Holdings*, 52 Fed. Cl. at 153 ("The doctrine of illegal exaction requires compensation for actual payments of money and has never, to the court's knowledge, been applied to compensate a plaintiff for lost opportunities to make money.").

Defendant's argument is correct. The CDC Order did not direct plaintiffs or others to "waive or defer rental payments otherwise due them." *Darby I*, 160 Fed. Cl. at 55. Unlike the CARES Act, the CDC Order specifically allowed landlords to assess and collect "fees, penalties, or interest" for the nonpayment of rent. *Compare* 85 Fed. Reg. at 55292, 55294, 55296, 55297 *with* CARES Act § 4024. "[T]he fact that the entry of a monetary judgment for back rent plus interest, fees, and penalties against a tenant following a judicial eviction proceeding may thereafter prove uncollectable does not convert the landlord's account receivable from a current or former tenant into an account payable to the government ab initio." *Darby I*, 160 Fed. Cl. at 56; *see also Shaffer*, 178 Fed. Cl. at 580–81 (dismissing illegal exaction claim based on CDC Order).

Plaintiffs attempt to analogize this case to *Modern Sportsman, LLC v. United States* ("*Modern Sportsman I*"), No. 19-449, 2026 WL 1657798 (Fed. Cl. June 5, 2026). Resp. at 8–10. There, a group of plaintiffs paid third parties to destroy bump stocks in compliance with a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") regulation later ruled unlawful. *Id.* at *6. The Court denied the Government's motion to dismiss the plaintiffs' claim for illegal exaction of the cost to destroy the bump stocks since, according to the complaint, "the ATF directed [the plaintiffs] to destroy the bump stocks." *Id.*

But in the same opinion, the Court granted the motion to dismiss plaintiffs' illegal exaction claim to recover the value of the bump stocks themselves. *Id.* at *5–6. The Court relied on its prior determination that "the phrase 'in effect' [from *Aerolineas Argentinas*] does not expand the category of illegal exaction claims to cases not involving the payment of money; instead, it simply refers to cases where the government gained money even though the money did not flow directly from the plaintiff to the government." *Mod. Sportsman, LLC v. United States* ("*Modern Sportsman II*"), 176 Fed. Cl. 567, 574 (2025) (citation modified); *see also Mod. Sportsman I*, 2026 WL 1657798, at *5 (citing *Mod. Sportsman II*).

Likewise, Plaintiffs' claims here do not involve the payment of money. Their only loss was the right to exclude non-paying tenants from their property; any costs of "housing delinquent or non-rent paying individuals" can be sought from these individuals. Compl. ¶ 100. Such a claim is not an illegal exaction as a matter of law. *Cf. Mod. Sportsman II*, 176 Fed. Cl. at 574 ("In sum, plaintiffs cannot be said to have paid money, directly or 'in effect,' for a very straightforward reason: They lost personal property, not money.").

For these reasons, Defendant's Motion to Dismiss as to Count II is granted.

## V.    Conclusion

Defendant's Motion to Dismiss is **GRANTED-IN-PART AND DENIED-IN-PART**. ECF No. 7. Defendant's Answer as to Count I is due **September 22, 2026** and the Joint Preliminary Status Report is due **October 22, 2026**.

    **IT IS SO ORDERED.**


 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge

7